UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-18-KSF

BRENDA ELDRIDGE                                                                                       PLAINTIFF

v.                                         **OPINION & ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                                DEFENDANT

\* \* \* \* \* \* \* \* \* \*

The plaintiff, Brenda Eldridge, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.      **OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the

claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm

the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.     THE ADMINISTRATIVE DECISION

In this case, the ALJ conducted a hearing on January 25, 2006, and issued his opinion denying Eldridge's application for SSI benefits on March 17, 2006. The ALJ went through all five steps in making his determination. First, the ALJ determined that Eldridge was not engaged in any substantial gainful employment. Although the ALJ did find that Eldridge had severe impairments related to her obesity, gallstones, status post cholecystectomy in 2005, borderline intellectual function, depressive disorder, not otherwise specified, low back pain secondary to scolisosis, idiopathic pancreatitis, chronic bradycardia, chronic obstructive pulmonary disease secondary to nicotine dependence, the ALJ determined that none of these severe impairments met or medically equaled a listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ did, however, find that Eldridge had the residual functional capacity to perform medium, light and sedentary work with the following qualifications: "she cannot work around concentrations of dust, smoke, gases, fumes, temperature extremes or excess humidity. She cannot work with the hands overhead. She requires simple, entry-level work with 1-2-3 step procedures, no frequent changes in work routines, no requirement for problem solving, individual planning, the setting of goals or more than occasional interaction with the general public. Any requirement for advanced literacy is ruled out."

Inasmuch as Eldridge had no past relevant work, the burden then shifted to the Commissioner to show that other work exists in the national economy that Eldridge could perform. The

Commissioner met this burden through the testimony of a vocational expert (the "VE"), who testified at the hearing that Eldridge could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors. The ALJ's decision that Eldridge is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review. This case is now ripe for review under 42 U.S.C. § 405(g), 1383(c)(3).

**III.    ANALYSIS**

On appeal, Eldridge argues that the ALJ's determination was not based on substantial evidence for several reasons. First, Eldridge contends that the ALJ failed to consider the applicability of Listing 12.05(C) at Step 3 of the sequential evaluation process. At this step, the burden is on Eldridge to show that she meets or equals an impairment listing in the Appendix 1 to the regulations. 20 C.F.R. 404 Supt. P. App. 1 (2007). *See Burress v. Secretary of Health and Human Services*, 835 F.2d 139, 140 (6th Cir. 1987); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). Listing 12.05 provides, in pertinent part, as follows:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

To meet the requirements of a listed impairment, Eldridge must satisfy all the elements set out above. *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1983); *King*

*v. Heckler*, 742 F.2d 968, 973-74 (6th Cir. 1984). This includes not only the diagnostic description in the introductory paragraph, but also any of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Eldridge contends that her condition meets Listing 12.05(C). However, the record contains substantial evidence that she does not meet this listing. In July 2000, Eldridge demonstrated IQ scores over 70 during her testing with Dr. Rigby, a licensed psychologist. Dr. Rigby further stated that Eldridge's intellectual functioning appeared to be higher than the test results revealed. Dr. Rigby opined that Eldridge demonstrated good ability to understand and follow directions, sustain attention, relate to others and tolerate stress and pressure of work activities. Although she had poor ability to understand, remember and carry out complex job instructions, Dr. Rigby concluded that Eldridge had good ability to perform simple job tasks.

Eldridge underwent further testing in March 2004 by Michelle Amburgey, a clinical psychologist. Although Eldridge did receive IQ scores in the 60s, Dr. Amburgey noted that the lower IQ scores could be attributed in part to her situational depression and anxiety resulting from current marriage problems and the recent loss of her children to social services. She diagnosed Eldridge with mild mental retardation, but noted that she could be functioning within the borderline range of intelligence. A non-examining psychologist, Dr. Stodola, reviewed Eldridge's mental health records, determined that her 2004 scores were inconsistent with her adaptive history, and opined that she had borderline intellectual functioning. A second non-examining psychologist, Dr. Ross, also reviewed Eldridge's mental health records and concurred with Dr. Stodola.

While Eldridge's 2004 IQ scores do fall within the range required by Listing 12.05(C), there is substantial evidence in the record to support the ALJ's finding that she does not meet or equal this listing. Eldridge's activities of daily living and social functioning suggest no significant deficit. For

example, the record shows that she is able to feed, bathe and dress herself without assistance. She carried, delivered and raised, until losing custody recently, five children. She has been married three times. She can drive a car and care for her house. She was able to understand and follow the hearing procedures and all lines of questioning. Accordingly, the ALJ's finding that Eldridge does not meet or equal Listing 12.05(C) is supported by substantial evidence.

Next, Eldridge argues that the ALJ failed to weigh conflicting findings from examining and non-examining consultants. Specifically, she contends that the ALJ failed to explain why he rejected Dr. Amburgey's opinion that, due to Eldridge's depression and anxiety, her "concentration would likely be poor in a work environment." The record reveals, however, that the ALJ did not reject Dr. Amburgey's opinion completely, but found that Eldridge was moderately limited in her ability to concentrate. Moreover, the other examining psychologist, Dr. Rigby, found that Eldridge had good ability to understand and follow directions, as well as sustain attention and perform simple tasks. In reviewing both Dr. Rigby's 2000 report and Dr. Amburgey's 2004 report, Dr. Stodola concluded that Eldridge was moderately limited in her ability to understand detailed instructions and maintain concentration for extended periods, but had demonstrated the ability to understand, remember, and carry out simple directions for two hour intervals.

While there are small variances in the opinions of the examiners, it is the duty of the ALJ to resolve these conflicts in evidence and assess the claimant's residual functional capacity. *See* 416.927(e), 416.946. The ALJ must consider not only the medical opinions, but also the other evidence presented. *Id.* The record reveals that Eldridge demonstrated an ability to complete simple one and two-step tasks through her daily activities, including her ability to drive a car, care for her own personal needs, watch television, and care for her house. Considering all the evidence in the record, substantial evidence supports the ALJ's conclusion to reject the portion of Dr. Amburgey's

opinion related to limitations on Eldridge's ability to concentrate and to find that she is actually able to complete simple, unskilled, entry-level work requiring only one, two or three step procedures that did not require frequent changes in work routine, problem solving, individual planning or setting goals.

As her third ground for appeal, Eldridge contends that the ALJ erred by failing to state to the vocational expert that her intellectual functioning was in the lowest 10% of the national population because he found she had borderline intellectual functioning.  However, there is simply no requirement in the regulations that the ALJ use this information in his hypothetical question to the vocational expert.  In fact, the Sixth Circuit has clearly stated that the ALJ is not required to include a diagnosis in his hypothetical question. *Webb v. Commissioner of Social Security*, 368 F.3d 629, 632-33 (6th Cir. 2004).  Instead, the vocational expert is to identify the existence of jobs, if any, given certain limitations that the ALJ poses, and is not to interpret the possible meaning of a medical prognosis and how that prognosis might affect work. *See* 20 C.F.R. 416.920(a)(4)(iv)-(v) (2007); *Webb*, 368 F.3d at 633.

The record shows that the hypothetical question to the vocational expert included the limitations relevant to Eldridge's diagnosis of borderline intellectual functioning by asking the vocation expert to assume a hypothetical claimant with the same age, education and experiences as the plaintiff who was limited to simple, unskilled, entry-level work requiring only one, two, or three step procedures that did not require frequent changes in work routine, problem solving, individual planning or setting goals.  Furthermore, the hypothetical limited the jobs to those that require only occasional interaction with the general public and no advanced literacy.  To the extent that the plaintiff argues that the VE's testimony is inconsistent with the job descriptions in the Dictionary of Occupational Titles ("DOT"), the VE specifically testified that his testimony was consistent with

the DOT, and the ALJ is not required to independently investigate a VE's testimony. *See Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002).

Next, Eldridge argues that the Commissioner's prior decision regarding her functional capacity is *res judicata* without evidence of a change in her medical condition based on *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). However, substantial evidence in the record reveals medical improvement in her condition since the Commissioner's prior decision in 2004 finding that she was capable only of limited light work. As the ALJ noted, Eldridge had successful gallbladder surgery in 2005 which relieved many of her symptoms. She also lost a significant amount of weight and had improved her diet since the last decision. Accordingly, the ALJ correctly determined that the Commissioner was not bound by the prior decision with respect to Eldridge's functional capacity.

Finally, Eldrige has failed to show that the ALJ violated his heightened duty because she was not represented by an attorney at the hearing. Eldridge was represented by a non-attorney representative at the hearing, and she has not alleged that her representative was incompetent or unable to assist her in presenting her claim. While the ALJ has a duty to develop a full and fair record, the ALJ is not required to act as the claimant's counsel or to produce evidence for the claimant. *Born v. Secretary of Health and Human Services*, 923 F.2d 1168, 1172 (6th Cir. 1990); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 856 (6th Cir. 1986). The burden is on the plaintiff to prove she is disabled, and Eldridge has failed to meet her burden or to require the ALJ to further develop the record.

**III. CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby ORDERS that the decision of the Commissioner is AFFIRMED as it was supported by substantial evidence.

This the 7th day of September, 2007.



Signed By:

*Karl S. Forester* KSF

United States Senior Judge